1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   MARTHA OCHOA, individual and on behalf of )   Case No.: 1:24-cv-0151 JLT BAM
     other members of the general public similarly )
12   situated and on behalf of other aggrieved )   ORDER DENYING PLAINTIFF'S MOTION TO
     employees pursuant to the California Private )  REMAND
13   Attorneys General Act, )
                                                )  (Doc. 19)
14                    Plaintiff, )
                                                )
15           v. )
                                                )
16   FRED LOYA INSURANCE AGENCY, INC., )
                                                )
17                    Defendant. )
                                                )
18   _____ )

19           Martha Ochoa is a former employee of Fred Loya Insurance Agency, and she seeks to hold the

20   company liable for violations of California's wage and labor laws, including those related to meal and

21   rest breaks, overtime pay, timeliness of wages, and wages due after employment ends.  Plaintiff

22   initiated this action by filing a complaint, on behalf of herself and others, in Merced County Superior

23   Court.  Defendant removed the suit to this Court under the Class Action Fairness Act, 28 U.S.C.

24   § 1332(d).  (Doc. 1.)  Plaintiff requests a remand to the state court, asserting Defendant fails to show by

25   a preponderance of the evidence that the amount in controversy requirement under CAFA is satisfied.

26   (Doc. 19.)  Defendant maintains the Court has jurisdiction under CAFA.  (Doc. 20.)  For the reasons

27   below, Plaintiff's motion to remand is **DENIED**.

28   ///

                                              1

## I.      Background

Plaintiff was employed by Fred Loya Insurance Agency from approximately January 2023 to approximately April 2023.  (Doc. 1-2 at 8, ¶ 25.)  She reports that her position was classified as an hourly-paid, non-exempt employee in Merced County.  (*Id.*)  Plaintiff seeks to represent a class defined as:  "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California."  (*Id.* at 4, ¶ 13.)

According to Plaintiff, "Defendant[] had the authority to hire and terminate Plaintiff and the other class members, to set work rules and conditions governing Plaintiff's and the other class members' employment, and to supervise their daily employment activities."  (Doc. 1-2 at 8, ¶ 27.)  She alleges that "Defendant[] engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California."  (*Id.* at 9, ¶ 32.)  Plaintiff contends the "pattern and practice involved … failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law."  (*Id.*)

She contends, "During the relevant time period, Plaintiff and the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty … hours in a week."  (Doc. 1-2 at 13, ¶ 59.)  Plaintiff alleges that "Defendant[] knew or should have known that Plaintiff and the other class members were entitled to receive certain wages for overtime compensation and that they were not receiving accurate overtime compensation for all overtime hours worked."  (*Id.* at 9, ¶ 33.)

Plaintiff asserts Defendant also "failed to provide all requisite uninterrupted meal and rest periods to Plaintiff and the other class members."  (Doc. 1-2 at 11, ¶ 45.)  She alleges, "Defendant[] knew or should have known that Plaintiff and the other class members were entitled to receive all meal [and rest] periods," or the payment of one additional hour of pay at their regular rates of pay when a meal or rest period was missed.  (*Id.* at 9-10, ¶¶ 35-36.)  However, Plaintiff contends she and the other class members "did not receive all meal periods" and "did not receive all rest periods."  (*Id.*)  She asserts Defendant "failed to compensate Plaintiff and the other class members the full … premium for work performed during meal [and rest] periods."  (*Id.* at 14-15, ¶¶ 70-71.)

Plaintiff alleges, "Defendant[] knew or should have known that Plaintiff and the other class

members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for all hours worked." (Doc. 1-2 at 10, ¶ 37.)  Plaintiff contends she and the putative class "did not receive payment of all wages, including overtime and minimum wages and meal and rest period premiums, within any time permissible under California Labor Code section 204." (*Id.*, ¶ 39.)

According to Plaintiff, Defendant "did not keep complete and accurate payroll records." (Doc. 1-2 at 11, ¶ 41.)  In addition, she alleges "Defendant[] failed to provide complete or accurate wage statements to Plaintiff and the other class members." (*Id.*, ¶ 49.)  She also asserts Defendant did not reimburse "necessary business-related expenses." (*Id.*, ¶ 42.)

Finally, Plaintiff asserts Defendant's departed employees did not receive "all wages owed … upon discharge or resignation, including overtime and minimum wages and meal and rest break premiums." (Doc. 1-2 at 10, ¶ 38; *see also id.* at 11, ¶ 47.)  She contends, "Defendant[] intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendant[] their wages, earned and unpaid, within seventy-two (72) hours of their leaving [Defendant's] employ." (*Id.* at 17, ¶ 91.)  Plaintiff alleges she "and the other class members are entitled to recover from Defendant[] the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (*Id.* at 18, ¶ 94.)

Based upon these allegations, Plaintiff filed a complaint in Merced County Superior Court, stating the following claims: (1) unpaid overtime, (2) unpaid meal period premiums, (3) unpaid rest period premiums, (4) unpaid minimum wages, (5) final wages not timely paid, (6) wages not timely paid during employment, (7) non-compliant wage statements, (8) failure to keep required payroll records, (9) unreimbursed busines expenses, (10) violations of Cal. Bus. & Prof. Code §§ 17200, and (11) violation of California's Labor Code Private Attorneys General Act of 2004. (*See* Doc. 1-2 at 1; *see also id.* at 12-26.)  The total amount in controversy is not specified in the complaint, though Plaintiff indicated: "The 'amount in controversy' for the named Plaintiff, including but not limited to claims for compensatory damages, restitution, penalties, wages, premium pay, and pro rata share of attorneys' fees, is less than seventy-five thousand dollars…." (*Id.* at 2, ¶ 1.)

Defendant removed the action to this Court pursuant to the Class Action Fairness Act. (Doc. 1.)

Defendant asserts the parties are diverse, as Plaintiff is a resident of California and Fred Loya Insurance is deemed a citizen of New Mexico and Texas.  (*Id.* at 7, ¶ 16(c).)  Defendant reported the company's records identify "approximately 2,107 individuals who worked for Fred Loya in non-exempt roles in California during the time period of November 29, 2019 to January 8, 2024."  (*Id.*, ¶ 15.)  Defendant asserts its "business records indicate that these individuals worked approximately 100,052 workweeks" during this period.  (*Id.* at 9, ¶ 17(d).)  In addition, Defendant asserts the average hourly rate of pay "was approximately $18.88 per hour."  (*Id.*)  Using this information, Defendant calculated the amount in controversy as $8,547,243.00 based on Plaintiff's claims for overtime and waiting time penalties.  (*Id.* at 9, ¶ 17(c); *see also id.* at 9-11, ¶¶ 17(d)-(e).)  Therefore, Defendant contends the amount in controversy requirement under CAFA is satisfied by these two claims.  (*Id.* at 11, ¶ 19.)

Plaintiff requests the Court be remanded to state court, asserting Defendant failed to submit competent evidence to support removal and the amount in controversy requirement is not satisfied. (Doc. 19.)  Defendant opposes remand, and provides an additional calculation related to Plaintiff's rest break violations in the opposition.  (Doc. 20.)  In reply, Plaintiff maintains the evidence submitted is insufficient and the amount in controversy fails to invoke this Court's jurisdiction.  (Doc. 22.)

## II.    Jurisdiction

A suit filed in a state court may be removed to the federal court if the court would have original jurisdiction over the suit.  28 U.S.C. § 1441(a); *see also Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress.").  Courts have original jurisdiction—or federal question jurisdiction—of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

### A.    Class Action Fairness Act

Under the Class Action Fairness Act, federal courts have original jurisdiction "over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)).  "Congress enacted CAFA to 'curb perceived abuses of the class action

device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts.'" *Singh v. Am. Honda Fin. Corp*., 925 F.3d 1053, 1067 (9th Cir. 2019) (quoting *United Steel v. Shell Oil Co*., 602 F.3d 1087, 1090 (9th Cir. 2010)).   The Supreme Court held there is "no presumption against removal jurisdiction [under CAFA] and that CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Allen v. Boeing Co*., 784 F.3d 625, 633 (9th Cir. 2015) (alteration in original), quoting *Dart Cherokee*, 574 U.S. at 89.

### B.      Burden of the Removing Party

"The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp*., 659 F.3d 842, 847 (9th Cir. 2011) (citation omitted).  A defendant seeking removal must file "a notice of removal 'containing a short and plain statement of the grounds for removal ....'" *Ibarra v. Manheim Investments, Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(a)).  "When a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.  A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924-925 (9th Cir. 2019) (quoting *Dart Cherokee*, 574 U.S. at 87-89 [modifications adopted]).  The notice is not required to "contain evidentiary submissions."  *Arias*, 936 F.3d at 922 (quoting *Ibarra*, 775 F. 3d at 1197).  When a removing defendant asserts recovery could exceed $5 million, "and the plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less, the defendant has borne its burden to show the amount in controversy exceeds $5 million." *Arias*, 936 F.3d at 927 (internal quotation marks and citation omitted).

Evidence establishing the amount in controversy is required "only when the plaintiff contests, or the court questions, the defendant's allegation."  *Dart Cherokee*, 574 U.S. at 89.  When the amount in controversy calculation is challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 992 (9th Cir. 2022) (citation omitted); *see also Harris v. KM Indus., Inc*., 980 F.3d 694, 699 (9th Cir. 2020) (indicating that when a calculation is

contested "[b]oth parties may submit evidence supporting the amount in controversy before the district court rules"). Thus, the removing party bears the ultimate burden of showing "by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F. 3d at 1197. This burden may be satisfied by submitting "affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal,'" or by relying upon reasonable assumptions. *Id.*; *LaCross v. Knight Transp. Inc*., 775 F.3d 1200, 1202 (9th Cir. 2015); *see also Arias*, 936 F.3d at 925 ("[a]n assumption may be reasonable if it is founded on the allegations of the complaint").

### C.   Challenges to the Court's Jurisdiction

Once removed, a plaintiff may seek remand by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations in the notice of removal. *Harris*, 980 F.3d at 699-700 (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)). "A facial attack accepts the truth of the defendant's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.*, 980 F.3d at 699 (internal quotations omitted). For example, challenges as to the form and competency of evidence raises a facial challenge. *See Salter*, 974 F.3d at 964. "A factual attack contests the truth of the allegations themselves." *Harris*, 980 F.3d at 699 (modifications adopted). When a plaintiff mounts a factual challenge to the removing party's jurisdictional allegations, the burden remains on the removing party to provide "competent proof" and show by preponderance of the evidence that the jurisdictional requirements are satisfied. *Id.* at 701.

### III.   Evidence in Support of Removal

Defendant submitted a declaration of Paul Buono, the Human Resources Manager of Fred Loya Insurance Company. (Doc. 3.) Mr. Buono reported that he has "regular and customary access to Company records, data, and other information relating to Fred Loya's employees." (*Id.* at 2, ¶ 2.) He asserts the records include "personnel information, onboarding documents, and payroll records relating to Fred Loya's employees." (*Id.*) According to Mr. Buono, "The Business Records are made in the ordinary and regular course of the Company's business at or near the time the recorded acts, conditions, and events occurred, by individuals with knowledge of the information recorded," and "kept in the regular course of the Company's business activity." (*Id.*) Mr. Buono indicates that he "regularly" uses

and relies upon the records "in the course of performing [his] job duties." (*Id.*)

Mr. Buono reports, "Based upon Fred Loya's Business Records, there were approximately 2,107 individuals who worked for Fred Loya in non-exempt positions in California during the time period of November 29, 2019 to January 8, 2024." (Doc. 3 at 2, ¶ 5.)  Mr. Buono indicates the records show "these individuals worked approximately 100,052 workweeks during the time period of November 29, 2019 to January 8, 2024, and the average base rate of pay for these individuals during the same time period was approximately $18.88 per hour." (*Id.* at 2-3, ¶ 5.)  In addition, Mr. Buono reports that according to the records, "there were approximately 1,333 non-exempt California employees whose employment terminated during the time period of November 29, 2020 to January 8, 2024." (*Id.* at 3, ¶ 6.)  He states: "Based on the Company's Business Records, these individuals worked approximately 33,455 workweeks during the time period of November 29, 2020 to January 8, 2024, and the average base rate of pay for these individuals during the same time period was $17.86 per hour." (*Id.*)  Mr. Buono also indicates the company's "non-exempt employees in California have been paid on a bi-weekly basis throughout the time period of November 29, 2019 to the present." (*Id.*, ¶ 7).  Mr. Buono reports that he had "personal knowledge of [these] facts set forth in []his Declaration." (*Id.* at 2, ¶ 1.)

Plaintiff argues that with the declaration of Mr. Buono, "Defendant fails to provide competent evidence" in support of removal.  (Doc. 19 at 9, emphasis omitted.)  Plaintiff asserts, "Mr. Buono's declaration is insufficient to establish that the amount in controversy exceeds $5 million as his declaration provides far less information than declarations courts have found to be inadequate in similar cases." (*Id.* at 10, citing *Contreras v. J.R. Simplot Co.*, 2017 U.S. Dist. LEXIS 166359, at *7-8, 2017 WL 4457228 (E.D. Cal. Oct. 5, 2017); *Rinaldi v. Dolgen Cal. LLC*, 2017 U.S. Dist. LEXIS 126540, at *9, 2017 WL 3406096 (E.D. Cal. Aug. 8, 2017).)  In addition, Plaintiff notes this Court previously held "the use of a conclusory declaration to support a Notice of Removal is insufficient if the declarant does not explain or discuss their methodology." (*Id.* at 10, citing *Weston v. Helmerich & Payne Int'l Drilling Co.*, 2013 WL 5274283, at *5 (E.D. Cal. Sep. 16, 2013).)

Plaintiff contends that Mr. Buono made "ambiguous assertions" by identifying "*approximately* 100,052 workweeks," the "*average* base rate of pay" and "*approximately*" 1,333 employees whose

1    employment was terminated during the relevant period.  (Doc. 19 at 10-11, emphasis in original.)

2    Plaintiff argues:

> Mr. Buono fails to provide the Court with any information as to how he
> determined these variables and why he was unable to provide concrete
> figures. These ambiguous assertions are especially concerning considering
> that Mr. Buono fails to attach a single business record, spreadsheet, or
> other supporting document to his declaration to corroborate his testimony.
> While Mr. Buono's declaration states that he has "access to
> Company records, data, and other information relating to Fred Loya's
> employees", absent from his declaration is any attestation as to precisely
> what these records encompass. (Buono Decl., ¶ 2.)
> Moreover, it is unclear how Mr. Buono reviewed these records
> prior to making his ambiguous assertions. Mr. Buono provides no
> breakdown of how he arrived at the numbers in his declaration. For
> example, Mr. Buono fails to state how he determined the total number of
> putative class members terminated during the covered period. It is unclear
> whether these numbers appear on the face of Defendant's business records
> or whether Mr. Buono engaged in mathematical calculations to arrive at
> these numbers. Mr. Buono does not describe the information in
> Defendant's payroll records, nor does he disclose whether he ran reports
> on the records to determine the variables he provides in his declaration.

(*Id.* at 11.)  Plaintiff contends the evidence does not satisfy the personal knowledge requirements of

the Federal Rules Evidence.  (*Id.* at 11-12.)  According to Plaintiff, "Defendant could have provided

the Court with the payroll records Mr. Buono reviewed but made a conscious decision not to do so.

Defendant's failure to provide competent evidence is particularly inexcusable since Defendant, as the

employer, has ready access to all the facts, records, and information necessary to support its amount in

controversy calculations."  (*Id.* at 12; *see also* Doc. 22 at 6-7.)  Therefore, Plaintiff argues that

Defendant "failed to put forth summary judgment type evidence upon which it can base its amount in

controversy calculations."  (*Id.*)

Defendant argues that the obligation on removal "is simply to provide a reasonable estimate of

the amount in controversy, not to comb through its records and prove Plaintiff's case for her."  (Doc. 20

at 7, citing *Attebery v. US Foods, Inc.*, 2024 WL 863795, at *4 (E.D. Cal. Feb. 28, 2024); *Andrade v.

Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (emphasis omitted).)

Defendant asserts a declaration is sufficient to support its notice of removal, and "[f]urnishing the

underlying records is not required."  (*Id.* at 11, citing *Everardo Garza Jr. v. Winco Holding, Inc.*, 2022

WL 902782, at *2 (E.D. Cal. Mar. 28, 2022); *Kincaid v. Educ. Credit Mgmt. Corp.*, 2022 WL 597158,

at *2 (E.D. Cal. Feb. 28, 2022).)  In addition, Defendant asserts the information in the declaration,

including "class counts, workweeks, and average pay rate information … is precisely what district courts routinely rely upon for purposes of determining the amount in controversy on a remand motion." (*Id.* at 12, emphasis omitted.)  To the extent Plaintiff challenges the use of the word "approximate," Defendant contends that Mr. Buono "provided all of the figures to the nearest single digit (and as to dollar amounts, to the nearest cent)."  (*Id.* at 12-13, emphasis omitted.)  Defendant also reports the use of "approximate" related to the number of employees was only to be certain "the representations in the declaration were true and correct as of the day he attested to them, as these counts and figures are constantly in flux as new employees are hired and existing employees terminate their employment on a day-to-day basis." (*Id.* at 12-13.)  Defendant contends that with such information, "the Buono Declaration is valid, conclusive evidence…."  (*Id.* at 13.)

Significantly, contrary to Plaintiff's suggestion, courts have declined to find that a declaration is *intrinsically* insufficient to satisfy a removing party's burden.  For example, the Ninth Circuit addressed the sufficiency of a declaration in *Garibay v. Archstone Comtys. LLC.*, 53 Fed. Appx. 763 (9th Cir. 2013).  The Court observed that the only evidence the defendants submitted to support removal was "a declaration by their supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages." *Id.*, 539 Fed. Appx. at 764.  Importantly, the Court also noted: "Beyond this, the defendants rely on speculative and self-serving assumptions about key unknown variables."  *Id.* The Court observed:

> For example, Garibay alleged violations of Cal. Labor Code § 226, which provides that employers who fail to provide employees with "an accurate itemized [wage] statement" are subject to fines.  Archstone's calculations assume that every single member of the class would be entitled to recover penalties for every single pay period. Garibay also alleges violations of Cal. Labor Code § 203, which provides that employers who fail to timely pay all earned wages upon termination are subject to a fine equal to the employee's normal wages for each day the wages are late, up to a maximum of 30 days.  Archstone assumes that each employee would be entitled to the maximum statutory penalty, but provides no evidence supporting that assertion. Along the same lines, Garibay alleged violations of Cal. Labor Code § 226.7, which provides that employers who fail to provide adequate meal or rest breaks must compensate the employee for an additional hour of pay.  Archstone assumes that each class member was wrongly denied a break twice each week.

*Id.*  In addition, the Court specifically noted: "Archstone failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than one

1    missed rest period per paycheck or one missed rest period per month." *Id.* (internal quotation marks

2    omitted).  Thus, the Court considered the declaration *coupled with* the self-serving assumptions

3    regarding the frequency of the alleged violations and found it "was insufficient to support removal

4    jurisdiction under CAFA." *Id.*

5           In *Contreras*—cited by Plaintiff—the Court selectively quoted *Garibay* for the proposition that

6    "[a] defendant's amount in controversy calculation is unjustified where the only evidence the

7    defendant provides is 'a declaration by [its] supervisor of payroll, which sets forth only the number of

8    employees during the relevant period, the number of pay periods, and general information about

9    hourly employee wages.'"  *Contreras*, 2017 WL 4457228, at *3 (quoting *Garibay*, 539 Fed. Appx. at

10   764).  However, the Court did not acknowledge the remainder of the Ninth Circuit's discussion in

11   *Garibay* concerning the "self-serving and speculative assumptions" related to the frequency of the

12   alleged violations—such as that all class members were entitled to waiting time penalties—which

13   were used to calculate the amount in controversy.  *See id.*

14          Moreover, after *Contreras*, the Ninth Circuit determined that a declaration may be sufficient

15   evidence to support removal, without additional evidentiary submissions.  *See Salter v. Quality*

16   *Carriers, Inc.*, 974 F.3d 959 (9th Cir. 2020).  In *Salter*, the plaintiff filed a putative class action for

17   wage and labor violations, which Quality then removed to federal court under CAFA.  *Id.* at 961.  The

18   district court observed Quality supported its notice of removal with a declaration from Cliff Dixon, its

19   Chief Information Officer, who did not "attach a single business record, spreadsheet, or other

20   supporting document to his declaration to corroborate his testimony." *Salter v. Quality Carriers, Inc.*,

21   2020 WL 1182581, at *2 (C.D. Cal. Mar. 20, 2020).  The district court also noted that Dixon's

22   declaration was based on his "review and understanding of company practices and records," but Dixon

23   did not identify "precisely what these records include or whether he actually reviewed any records

24   before his declaration was drafted." *Id.*  The district court found Quality "failed to provide the

25   necessary foundation for its calculations and, thus, have failed to put forth summary-judgment-type

26   evidence necessary to demonstrate its amount in controversy calculations." *Id.*  Citing *Contreras* and

27   *Rinaldi*—which are both cases now cited by Plaintiff to support remand—the district court concluded:

28   "The unsupported and conclusory statements in Dixon's declaration are insufficient to establish that

10

1   the amount in controversy exceeds $5 million." *Id.* (citing *Contreras*, 2017 WL 4457228, at *3;

2   *Rinaldi*, 2017 WL 3406096, at *3.)

3       On appeal, the Ninth Circuit determined the district court erred in its analysis. *Salter*, 974 F.3d

4   at 963-965.  The Court observed:

5           According to Salter, Quality failed to meet this [removal burden] by
            offering only a short declaration by one of its employees and not providing
6           a single business record to support that declaration.  He contends that the
            district court properly rejected the declaration because evidence submitted
7           at summary judgment must satisfy the "best evidence rule," which
            requires that a party provide "the original of a writing, recording, or
8           photograph" to "prove the contents thereof."  Salter argues that because
            the best evidence rule applies whenever the contents of a document are
9           sought to be proved, a declarant may not simply testify to the contents of a
            document, he must actually produce the document for it to be considered.

10

11   *Id.* at 963-94.  The Court observed that Salter made a facial attack against the defendant's jurisdictional

12   assertions, because Salter did not offer any of his own evidence or challenge the rationality of the

13   information, and rather "argued only that Quality 'must support its assertion with competent proof.'"

14   *Id.*  The Court found "such a challenge is foreclosed by the Supreme Court's decision in *Dart* and [the

15   Ninth Circuit's] opinion in *Arias*," in which the Court determined "a removing defendant's notice of

16   removal *need not* contain evidentiary submissions but only plausible allegations of jurisdictional

17   elements."  *Id.* (quoting *Arias*, 936 F.3d at 922 (emphasis added, internal quotation marks omitted)).

18   Because Salter challenged only the declaration as "competent proof," the Ninth Circuit found the

19   district court erred and vacated the remand order.  *Id.*

20       As in *Salter*, it appears Plaintiff makes a facial attack to the declaratory evidence provided by

21   defendant, because she does not present any of her own evidence to challenge the accuracy of the

22   information from Mr. Buono. *See Salter*, 974 F.3d at 961. Rather, Plaintiff argues the declaration is not

23   "competent evidence" and that "Defendant's failure to provide competent evidence is particularly

24   inexcusable since Defendant, as the employer, has ready access to all the facts, records, and information

25   necessary to support its amount in controversy calculations."  (Doc. 19 at 9, 12; *see also* Doc. 22 at 6-

26   7.)  These challenges to the form and competency of the evidence presented constitute a facial

27   challenge. *See Salter*, 974 F.3d at 961; *see also Bulnes v. Suez WTS Servs. USA, Inc.*, 2023 WL

28   2186431, at *4 (S.D. Cal. Feb. 23, 2023) (explaining that where a plaintiff challenges a declaration as

11

1    "not competent evidence" and asserts the "failure to provide underlying records is particularly

2    inexcusable since Defendant is an employer," such a challenge is a facial attack, rather than factual)

3    (internal quotation marks omitted).

4           Following *Arias* and *Salter*, the Court finds Plaintiff's argument that Defendant failed to

5    provide "competent evidence" with the declaration from Mr. Buono is foreclosed.  Mr. Buono reports

6    he has "regular and customary access to Company records," which "include… personnel information,

7    onboarding documents, and payroll records relating to Fred Loya's employees."  (Doc. 3 at 2, Buono

8    Decl. ¶ 2.)  He also indicates the information provide in the declaration is "based on the Company's

9    Business Records," which he regularly uses and relies upon to perform his job duties as the Human

10   Resources Manager and he has "personal knowledge of the facts set forth in []his Declaration." (*Id.*, ¶¶

11   1-2.)  This information is sufficient.  *See Salter*, 974 F.3d at 963-965; *see also Arrow Elecs., Inc. v.*

12   *Justus (In re Kaypro),* 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred

13   from a declarant's position").  Contrary to Plaintiff's assertion, Mr. Buono was not required to attach

14   additional evidence to his declaration, such as payroll records and timesheets.  *See Salter*, 974 F.3d at

15   963-965; *see also Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1186-87 (E.D. Cal. 2020) (rejecting the

16   plaintiff's argument that a declaration, which identified the number of employees and average hourly

17   rate, was "*per se* insufficient because it lacks foundation and corroborating documents such as payroll

18   records"); *Hayes v. Salt & Straw, LLC*, 2020 WL 2745244, at *3 (C.D. Cal. May 27, 2020) (rejecting

19   the plaintiff's argument that a declaration from a human resource manager was insufficient "because

20   [the defendant] failed to submit the underlying payroll records").

21          Finally, district courts in the Ninth Circuit have repeatedly determined that the "approximate"

22   number of putative class members and "average" hourly rates may be used by a removing party to

23   calculate the amount in controversy.  *See, e.g., Sanchez v. Abbott Labs.*, 2021 WL 2679057, at *4

24   (E.D. Cal. June 29, 2021) (indicating evidence regarding the "averages of the putative class" can be

25   used to calculate the amount in controversy); *Vigil v. DAK Resources, Inc.*, 2023 WL 5917522, at *2

26   (E.D. Cal. Aug. 10, 2023) (a declaration identifying: "(1) the pay period frequency; (2) an estimated

27   number of non-exempt employees in California; (3) an estimated number of workweeks worked by

28   employees; (4) the average hourly pay rate; (5) average shifts worked per week; and (6) an estimated

number of terminated employees" provided employment data to calculate the estimated amount in controversy); *Santino v. Am. Airlines, Inc.*, 2024 WL 978963, at *7 (S.D. Cal. Mar. 7, 2024) ("Courts routinely accept a class's average hourly rate" when calculating premiums for missed breaks); *Moore v. Addus Healthcare, Inc.*, 2019 WL 3686584, at *3 (N.D. Cal. Aug. 7, 2019) ("The overwhelming majority of courts—including this one—have considered reasonable averages like Defendants' in evaluating whether CAFA's amount-in-controversy requirement is met"); *see also Sanchez v. Russell Sigler, Inc.,* 2015 WL 12765359, at *5 (C.D. Cal. Apr. 28, 2015) (explaining that "it is hard to imagine a more useful metric than the putative class's average hourly wage").  Toward that end, Plaintiff's criticisms of the *approximate* number of class members and their *average* hourly rates that Mr. Buono identified from the business records are unavailing.

The evidence provided by Mr. Buono—including the estimated number of class members, estimated number of terminated employees, average hourly rates during the relevant period, the estimated number of workweeks, and the pay period frequency—may be used to calculate damages and the amount in controversy.  *See Sanchez,* 2021 WL 2679057, at *4; *Hayes*, 2020 WL 2745244, at *3 (finding declarations that included the "approximate[]" number of employees, workweeks, and "average hourly rate" were "competent evidence" to support the amount in controversy calculations).

**IV.     Discussion and Analysis**

Plaintiff requests the Court be remanded to state court, asserting Defendant fails to show the action satisfies the jurisdictional requirements of CAFA.  (*See generally* Doc. 19.)  Defendant opposes remand, and provides an additional calculation related to Plaintiff's rest period claim in the opposition. (Doc. 20.)

**A.     Diversity of the Parties**

As an initial matter, Plaintiff does not contest the diversity of the parties.  (*See generally* Doc. 19.)  Because Plaintiff is a resident of California and Defendant was incorporated in New Mexico with its principal place of business in Texas, the Court finds the parties are diverse and this element of CAFA is satisfied.

**B.     Number of Class Members**

Plaintiff seeks to represent a class defined as:  "All current and former hourly-paid or non-

1  exempt employees who worked for any of the Defendants within the State of California at any time

2  during the period from four years preceding the filing of this Complaint [on November 29, 2023] to

3  final judgment and who reside in California." (Doc. 1-2 at 4, ¶ 13.)  Mr. Buono reports that based upon

4  Defendant's records, "there were approximately 2,107 individuals who worked for Fred Loya in non-

5  exempt positions in California during the time period of November 29, 2019 to January 8, 2024."

6  (Doc. 3 at 2, ¶ 5.)  Plaintiff does not dispute that the number of class members exceeds the minimum of

7  100 persons as required by CAFA.  (*See generally* Doc. 19.)  Therefore, the Court finds class size

8  satisfies this jurisdictional requirement.

9       **C.**    **Amount in Controversy**

10       The Ninth Circuit explained that "[t]he amount in controversy is simply an estimate of the total

11  amount in dispute, not a prospective assessment of [the] defendant's liability." *Lewis v. Verizon*

12  *Communs., Inc*., 627 F.3d 395, 401 (9th Cir. 2010).  Thus, amount in controversy is not the amount a

13  plaintiff will *likely* recover.  *Chavez v. JPMorgan Chase & Co*., 888 F.3d 413, 417 (9th Cir. 2018).

14  Rather, it "reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at

15  927 (citing *Chavez*, 888 F.3d at 417) (emphasis in original).  To determine the amount in controversy

16  for CAFA purposes, the claims of individual members in a putative class are aggregated.  28 U.S.C. §

17  1332(d)(6); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013).

18       In the Notice of Removal, Defendant asserts the amount in controversy requirement is satisfied

19  based upon Plaintiff's overtime claim and the waiting time penalties.  (Doc. 1 at 8-10, ¶¶ 17-18.)

20  Plaintiff disputes the assumptions made to determine the amount in controversy, asserting the

21  calculations were unreasonable, unsupported, and inflated.[1] (Doc. 19 at 12-15.)

22          1.    Overtime claims

23       Plaintiff contends that "[she] and the other class members worked in excess of eight (8) hours

24  in a day, and/or in excess of forty (40) hours in a week" during the relevant class period.  (Doc. 1-2 at

25  13, ¶ 59.)  She alleges, "Defendant[] knew or should have known that Plaintiff and the other class

26  members were entitled to receive certain wages for overtime compensation and that they were not

27

28  [1] Toward this end, the Court notes Plaintiff also raises a factual attack as to the jurisdictional assertions made by
Defendant.  *See Harris*, 980 F.3d at 700.

receiving accurate overtime compensation for all overtime hours worked." (*Id.* at 9, ¶ 33.) Plaintiff contends Defendant had a "pattern and practice of wage abuse … [that] involved, *inter alia*, failing to pay them for all … overtime wages earned…." (*Id.*, ¶ 32.) For this, Plaintiff seeks to recover unpaid overtime compensation owed pursuant to California Labor Code §§ 510, 1198, and 1194. (*Id.* at 13.) The California Labor Code requires employers to pay employees who work in excess of eight hours in a day, or forty hours in a week, at a "rate of no less than one and one- half times the regular rate of pay for an employee." Cal. Lab. Code § 510(a). Defendant asserts this claim puts $2,833,472 in controversy, assuming a violation rate of "one hour of uncompensated overtime per workweek." (Doc. 1 at 9-10, ¶ 17(d).)

Plaintiff contends Defendant's calculation related to the overtime claim is "unreasonable and unsupported by any evidence." (Doc. 19 at 14.) Plaintiff argues that "Defendant provides no reasonable explanation for assuming that each putative class member worked an hour of unpaid overtime every single week." (*Id.* at 15.) She asserts the "operative complaint does not make any such allegations and Defendant fails to explain how the nature of the class members' work duties makes one hour of unpaid overtime per week a reasonable estimate." (*Id.*) In addition, Plaintiff contends that "Defendant did not provide any information about the lengths of any of workdays during any of the purported workweeks to justify their assumption that every putative class member worked long enough shifts to trigger overtime every workweek." (*Id.*)

On the other hand, Defendant notes that Plaintiff alleged she and the putative class members "worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment" and Defendant had a "pattern and practice" of failing to pay all overtime wages earned. (Doc. 20 at 14, citing Doc. 1-2, ¶¶ 31-32.) Defendant observes that it "conservatively assumed that putative class members worked just one hour of uncompensated overtime per workweek, even while case law would support an assumption of double that amount (i.e., two hours per workweek) where, as here, the plaintiff alleges a policy or practice of failing to pay overtime wages." (*Id.* at 15, citing *Andrade*, 2019 WL 4855997, at *3 [emphasis omitted].) Defendant notes that in *Andrade*, the Central District determined a calculation assuming "two hours of uncompensated overtime per workweek" was reasonable where the plaintiffs alleged a "policy and/or practice" of failing to pay overtime. (*Id.*,

15

quoting *Andrade*, 2019 WL 4855997, at *3 [emphasis omitted].)  In addition, Defendant notes this assumption was "endorsed by judges in the Eastern District," who have approved a 20% violation rate per pay period.  (*Id.*, citing *Garza*, 2022 WL 902782, at *2; *Kincaid*, 2022 WL 597158, at *2.)

As Defendant observes, this Court found that when the plaintiff alleged a general pattern or practice of unpaid overtime, the presumption of a one-hour per week of missed overtime pay, the equivalent of a 20% violation rate, was reasonable.  *See, e.g.*, *Kincaid v. Educ. Credit Mgmt. Corp.*, 2022 WL 597158, *4; *Ramirez v. Cornerstone Bldg. Brands*, 2022 WL 1018439, at *3-4 (E.D. Cal. Apr. 4, 2022); *Wicker v. ASC Profiles LLC*, 2021 WL 1187271, *2-3 (E.D. Cal. Mar. 30, 2021) (finding one overtime violation per week—a 20% violation rate—was a reasonable assumption based on "Plaintiff's complaint alleging Defendants' 'a pattern and practice' of failing to pay overtime wages"); *Sanchez v. Abbott Laboratories*, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) ("Courts in this Circuit have often found a 20% violation rate (one unpaid overtime hour per week) a reasonable and 'conservative estimate' when plaintiff alleges a 'policy and practice' of failing to pay overtime wages").  Indeed, following *Ibarra,* district courts determined that "violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation[s]."  *Avila*, 432 F. Supp. 3d at 1189 (collecting cases).

For example, in *Ramirez*, the seven named plaintiffs brought wage and hour claims on behalf of a class, including overtime claims.  *Id.*, 2022 WL 1018439, at *1.  The *Ramirez* plaintiffs alleged: "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California," with "this pattern and practice involv[ing], *inter alia*, failing to pay them for all regular and/or overtime wages earned…."  *Id.*  The Court noted that "none of the seven named Plaintiffs have specifically alleged the frequency of the violations aside from their allegation in the Complaint that they amounted to a 'pattern and practice.'"  *Id.*, at *4  The Court observed, "Given the fact that Plaintiffs have not quantified the amount of overtime … they may be owed, courts have found that overtime rates of one hour per week are in order."  *Id.* (citing *Kastler v. Oh My Green, Inc*., 2019 WL 5536198 at *4 (N.D. Cal. Oct. 25, 2019).)

The allegations now before the Court are nearly identical to those raised in *Ramirez*, and suffer the same deficiencies.  Plaintiff does not make any allegations related to the frequency of the alleged

overtime work without pay, and instead merely Defendant engaged in a "pattern and practice [that] involved, *inter alia*, failing to pay them for all … overtime wages earned…." (Doc. 9, ¶ 32.)  Thus, the Court finds Defendant's assumption of one hour per week was reasonable.  *See Ramirez*, 2022 WL 1018439, at *4; *see also Avila*, 432 F. Supp. 3d at 1189; *Wicker*, 2021 WL 1187271, *2-3.  This was not merely a self-serving and speculative assumption as Plaintiff argues, but rather a reasonable assumption supported by the "pattern and practice" allegations and consistent with prior case law.

Based upon the employment data identified by Mr. Buono and the reasonable assumed violation rate, Defendant shows by a preponderance of the evidence that Plaintiff's overtime claim places $2,833,472.64 in controversy.[2]

### 2.   Waiting time penalties

In the complaint, Plaintiff alleges that Defendant's departing employees did not receive "all wages owed … upon discharge or resignation."  (Doc. 1-2 at 10, ¶ 38; *see also id.* at 11, ¶ 47.)  She contends, Defendant "intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendant[] their wages, earned and unpaid, within seventy-two (72) hours of their leaving [Defendant's] employ."  (*Id.* at 17, ¶ 91.)  Plaintiff asserts that she and putative class members are entitled to "the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203."[3]  (*Id.* at 18, ¶ 94.)  Defendant asserts that during the applicable period, 1,333 non-exempt California employees left their employment and—assuming they were each entitled to penalties for 30 days—this puts $5,713,771.20 in controversy.  (Doc. 1 at 10-11, ¶ 17(e).)

Plaintiff argues that "Defendant's calculation of waiting time penalties is inflated and unsupported."  (Doc. 19 at 12, emphasis omitted.)  Plaintiff contends the "time period for employees subject to the waiting time penalties is overinclusive," and "Defendant improperly assumes maximum

---

[2] Mr. Buono reported the average hourly rate for the class members was $18.88.  Because overtime is paid at time and a half under Cal. Labor Code § 510, the average hourly rate for overtime was $28.32 (18.88 x 1.5= 28.32)  Thus, Defendant calculated: 1 hour of overtime x $28.32 per hour x 100,052 workweeks = $2,833,472.64.  (Doc. 1 at 10.)

[3] Under California Labor Code sections 201(a) and 202(a), discharged employees are generally entitled to receive all wages owed immediately on termination, while resigned employees generally receive payment within 72 hours. If an employer fails to timely pay wages due upon termination, then the aggrieved employee is entitled to waiting time penalties "from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a).

violations for all the putative class members that ended their employment." (*Id.* at 12-13.)  Plaintiff observes that the Ninth Circuit rejected the application of maximum penalties in both *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994 (9th Cir. 2007) and *Garibay v. Archstone Communities, LLC*, 539 Fed. Appx. 763 (9th Cir. 2013).  (*Id.* at 3.)  In addition, Plaintiff notes that Eastern District rejected calculations assuming the maximum penalties calculations.  (*Id.*, citing, *Jayme v. Checksmart Fin., LLC*, 2010 WL 2900333, at *2 (E.D. Cal. July 22, 2010); *Hender v. Am. Directions Workforce LLC*, 2020 WL 5959908, at *4 (E.D. Cal. Oct. 8, 2020).)  Plaintiff argues there is "no evidence at all to support its assumption that these employees would be entitled to the maximum amount of penalties," and the "waiting time penalties calculation should be disregarded." (*Id.* at 14.)

Importantly, Plaintiff's reliance upon *Lowdermilk* and *Garibay* appears misplaced, as both cases must be distinguished from the matter now pending.  In *Lowdermilk*, the Ninth Circuit found a declaration from a human resource employee was insufficient to demonstrate the CAFA jurisdictional amount was met "to a legal certainty." *Id.*, 479 F.3d at 999-1001.  However, in this case, Defendant's burden is to prove the amount in controversy by a preponderance of the evidence, not to a legal certainty.  *Jauregui*, 28 F.4th at 992; *Harris*, 980 F.3d at 701; *see also Ibarra*, 775 F.3d at 1196 (recognizing *Lowdermilk* was overruled).  In *Garibay*, the Ninth Circuit determined the defendant failed to provide a basis to assume maximum waiting time penalties, and held the "speculative and self-serving assumptions" were insufficient to support removal.  *Id.*, 539 Fed. Appx. at 764-765.  However, because the Ninth Circuit did not discuss the allegations of the complaint, courts have since determined the analysis "is of limited utility."  *See, e.g., Herrera v. Carmax Auto Superstores Cal., LLC*, 2014 WL 12586254, at *3 (C.D. Cal. June 12, 2014) ("*Garibay* is of limited utility here because it contains little discussion of the allegations of the complaint…"); *Rivera v. Jeld-Wen, Inc*., 2022 WL 3702934, at *5 (S.D. Cal. Feb. 4, 2022) (same).  Moreover, the defendant in *Garibay* assumed "*each* employee would be entitled to the maximum statutory penalty," and did not appear to limit the waiting time penalties to former employees.  *Garibay*, 539 Fed. Appx at 764 (emphasis added).  Toward that end, *Garibay* may be distinguished.  *See, e.g., Garza v. Brinderson Constructors, Inc*., 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (holding *Garibay* is distinguishable and a defendant need not produce evidence if allegations in the complaint support the maximum statutory penalty).

Unlike in *Garibay*, Defendant's assumption of the maximum waiting time penalties was limited to *former* employees, and the assumption is not inconsistent with Plaintiff's allegations.  As Defendant observes:

> Plaintiff alleges a *pattern and practice* of various alleged Labor Code violations by Fred Loya, which – if accepted at face value for purposes of the amount-in- controversy analysis as required – would support the conclusion that each of the former employees would have some measure of purported wages that have gone unpaid following their terminations and would thus be entitled to waiting time penalties.

(Doc. 20 at 17, emphasis in original.)  Specifically, Plaintiff alleges that "[she] and the other class members were entitled to receive all wages owed to them upon discharge or resignation, including overtime and minimum wages and meal and rest period premiums, and they did not, in fact, receive all such wages owed to them at the time of their discharge or resignation."  (Doc. 1-2 at 10, ¶ 38.)  In addition, Plaintiff incorporates all prior allegations (concerning minimum wages, overtime wages, and meal and rest break violations) into her fifth cause of action related to wages due after termination and contends she and the other departed employees "are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203."  (*Id.* at 17-18, ¶¶ 89, 94.)  Thus, from the face of the complaint, Plaintiff's claim for waiting time penalties is derivative of her other claims, in which she alleges the "pattern and practice" of minimum wage, overtime, meal break, and rest break violations.

Notably, this Court previously observed that when a practice of wage and hour violations is alleged, "the recovery of waiting time penalties does not hinge on the number of violations committed; rather Defendants need only have caused and failed to remedy *a single violation* per employee for waiting time penalties to apply."  *Demaria v. Big Lots Stores – PNS, LLC*, 2023 WL 6390151, at *7 (E.D. Cal. Sept. 29, 2023) (internal quotation marks, citation omitted) (emphasis added).  In *Demaria*, the plaintiff alleged the defendants had "a practice and policy" of wage and hour violations, including overtime, meal break, and rest break violations.  *Id.,* 2023 WL 6390151, at *5-6.  Given the alleged "practice and policy" of violations, the Court found it was "reasonable to assume all or nearly all employees in the class would be entitled to recovery of waiting time penalties."  *Id.* at *7 (citing *Cavada v. Inter-Continental Hotels Grp.*, 2019 WL 5677846, at *9 (S.D. Cal. Nov. 1, 2019).)

Likewise, the Central District determined that when a waiting time claim is derivative of other labor code violations on behalf of a class, a 100% violation rate is appropriate for former employees. *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, 2023 WL 524626 (C.D. Cal. Aug. 14, 2023).  In *Wilcox*, the plaintiff brought her wage and hour claims—which included meal and rest break violations, overtime wages, minimum wages, and waiting time penalties— on behalf of a class including "*all* current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of [her] complaint up until the time that notice of the class action is provided to the class." *Id.*, 2023 WL 524626, at *4 (emphasis in original).  The court observed that a "former employee need only suffer *one* of the alleged violations *at any time* during employment to bring a claim for failure to timely [pay] wages upon termination." *Id.* (emphasis added).  "In other words, any failure to pay overtime, minimum wages, rest period premiums, meal premiums, or uniform reimbursements would result in all terminated or resigned employees not receiving all wages owed…." *Id.*  Thus, the court found it was "reasonable to assume that … 100% of former employees suffered derivative waiting time violations." *Id.* (citation omitted).

As in *Wilcox*, Plaintiff seeks to represent a class that includes "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendant[] within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California."  (Doc. 1-2 at 4, ¶ 13.)  In addition, Plaintiff tethered her waiting time penalties to the other claims for which she alleged Defendant engaged in a "pattern and practice" of violations.  (*See id.* at 9-10, ¶¶ 32, 38.)  As a result, any former employee of Defendant need only suffer a single violation—whether meal break, rest break, overtime wages, *or* minimum wages—to be entitled to the waiting time penalties.  *See Wilcox*, 2023 WL 524626, at *4.  Thus, the Court concludes Defendant's assumption of a 100% violation rate is reasonable because it is limited to the former employees and consistent with the allegations in the complaint.  *See Demaria*, 2023 WL 6390151, at *7; *Wilcox*, 2023 WL 524626, at *4; *see also Salonga v. Aegis Senior Cmtys., LLC*, 2022 WL 1439914, at *4 (N.D. Cal. May 6, 2022) ("courts … within the Ninth Circuit have accepted a 100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees") [collecting cases]).

1       Based upon the employment data identified by Mr. Buono related to the former employees

2   who departed during the relevant period and the reasonable assumed violation rate, tethered to the

3   allegations of the complaint, Defendant shows by a preponderance of the evidence that Plaintiff's

4   claim for waiting time penalties places $5,713,771.20 in controversy.[4]

5                   3.      Additional calculations in the opposition

6       Defendant added a calculation related to Plaintiff's rest break claim in the opposition to

7   pending motion.  (Doc. 20 at 20-22.)  However, Defendant shows by a preponderance of the evidence

8   that $8,547,243.84 is in controversy with the overtime claim and waiting time penalties.  Accordingly,

9   the minimum amount in controversy requirement of CAFA is satisfied and the Court declines to

10  address the additional calculation.

11  **V.      Conclusion and Order**

12      For the reasons set forth above, the Court finds Defendant carries the burden to show by a

13  preponderance of the evidence the Court has jurisdiction over the matter pursuant to the Class Action

14  Fairness Act.  Thus, the Court **ORDERS**: Plaintiff's motion to remand the case to Merced County

15  Superior Court (Doc. 19) is **DENIED**.

16

17

    IT IS SO ORDERED.

18

19      Dated:   __**May 7, 2024**__                              _____
                                                                 UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26  ---
    [4] Mr. Buono reported "there were approximately 1,333 non- exempt California employees whose employment terminated
    during the time period of November 29, 2020 to January 8, 2024," and the average hourly rate for the employees was
27  $17.86.  (Doc. 3 at 3, ¶ 6.)  In the complaint, Plaintiff indicated she and the class members worked over 8-hour days.  (Doc.
    1-2 at 9, ¶ 31.)  Finally, a maximum statutory violation entitles Plaintiff and the former employees to penalties for 30 days.
28  Thus, Cal. Lab. Code § 203(a).  Thus, Defendant calculated: $17.86 (per hour) x 8 (hours per day) x 30 (days' penalties) x
    1,333 (terminated employees) = $5,713,771.20.  (Doc. 1 at 11.)